# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JANET BELLOWS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **5:15-cv-02328-AKK** |
| **HUNTSVILLE HOSPITAL,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Janet Bellows brings this discrimination action pursuant to the Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 602, as amended, 29 U.S.C. § 621, *et seq*., and the Alabama Age Discrimination in Employment Act of 1997 (AADEA), Ala. Code § 25-1-20, *et seq.*, against her former employer, Huntsville Hospital (the Hospital). The Hospital has now moved for summary judgment primarily arguing that it never took an adverse employment action against Bellows, and that, in any event, Bellows has failed to show that it discriminated against her based on her age. *See* Doc. 31. The Hospital's motion is now fully briefed, docs. 32; 38; 41, and ripe for review. After careful consideration of the parties' briefs, the record, and the applicable law, the court finds that the motion is due to be granted.

## I.   STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (11th Cir. 1986). Thus, "a party opposing a properly supported motion for summary judgment . . . must set forth specific facts showing that there is a genuine issue." *Id.* at 256. However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255. Indeed, it is explicitly not the role of the court "to weigh conflicting evidence or to make credibility determinations." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996); *see also Anderson*, 477 U.S. at 255 (explaining "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

"[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Nor will "a . . . 'scintilla of evidence in support of the nonmoving party . . . suffice.'" *Melton v. Abston*, 841 F.3d 1207, 1219 (11th

Cir. 2016) (quoting *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004)). In short, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## II. <u>FACTS</u>

Janet Bellows, then 55 years old, was originally hired by the Hospital in 2004 to work as a nurse in the Neuro Progressive Care Unit. Doc. 33-1 at 10–11. Over a decade later, on January 7, 2015, Bellows was still at the Hospital working as a part time nurse in the Neuro Spine Neuro Surgery Department. Docs 33-1 at 13, 25–26; 33-13 at 2; 39-1 at 2. That day, one of Bellows' patients asked for a discharge, informing Bellows that she had already received clearance to leave the Hospital. Doc. 33-1 at 32. Bellows checked the patient's progress notes which indicated, among other things, "[h]ome possibly A.M. tomorrow v/s later today." *Id.* at 33; Doc. 33-22 at 4. Bellows interpreted this note to mean that the patient was eligible for a discharge that afternoon. Doc. 33-1 at 32–33, 41–43.[1] As a

---

[1] Bellows' testimony suggested, albeit without specifics, that she believed that a progress note in the patient's chart expressly authorized her to discharge the patient. Doc. 33-1 at 33, 43. She does not argue, however, that any relevant documentation is missing from the records provided by the Hospital, and she has failed to identify any evidence otherwise substantiating her position. *See* Doc. 38 at 2–5. In short, there is nothing in the record, beyond Bellows' conclusory assertion, to indicate the existence of a progress note explicitly authorizing Bellows to discharge the patient. Moreover, "'[w]hen documentary evidence 'blatantly contradicts' a plaintiff's account . . . a court should not credit the plaintiff's version on summary judgment.'"

result, at 1:20 p.m., Bellows discharged the patient, writing in the notes that she had done so pursuant to a telephone order from the treating physician. Docs 33-22 at 3; 33-1 at 32–34.

Bellows admits that she never spoke to a doctor before discharging this patient, and that she lacked the authority to discharge patients on her own. Doc. 33-1 at 34, 43–44. The next day, the patient Bellows discharged was readmitted to the hospital after developing a fever. *Id.* at 34; Doc. 39-1 at 2. After looking into the matter, the treating physician, who was upset that Bellows failed to obtain his approval prior to discharging the patient, raised the issue with Bellows' direct supervisor Mark Walden. Docs. 39-1 at 2; 33-23 at 5–7, 9, 13. Walden, along with two other supervisory employees, met with Bellows and informed her that she could either resign or face termination as a result of her infraction. Docs. 33-1 at 34; 33-24 at 2–3. Bellows disagreed with the proposed discipline, and Walden completed a termination form on her behalf. Doc. 39-1 at 2; 33-1 at 34–36.

Bellows subsequently met with the Hospital's Vice-President of Surgical Services, Thomas Fender, to object to her discharge. Docs. 33-1 at 37; 33-24 at 3. Fender instructed an Employee Relations Specialist, Cynthia Traylor, to review

---

*Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (quoting *Witt v. W. Va. State Police*, 633 F.3d 272, 276–77 (4th Cir. 2011)); *see also Johnson v. Niehus*, 491 F. App'x 945, 949 (11th Cir. 2012) (explaining that a court need not credit self-serving evidence "which is blatantly contradicted by the record, so that no reasonable jury could believe it") (quotation omitted); *Vicks v. Knight*, 380 F. App'x 847, 852 (11th Cir. 2010) (affirming summary judgment because "a reasonable factfinder could not believe" the non-movant's assertions that were "contradicted by all of the relevant evidence, with the exception of his own affidavit").

Bellows' discipline, and, in the interim, Traylor placed Bellows on paid administrative leave. Docs. 33-24 at 3; 33-26 at 2. Roughly a week after Bellows' meeting with Walden, Fender rescinded the termination decision and offered Bellows the option of either accepting a final warning and a lateral transfer to a different unit, or resigning with 30 days of paid administrative leave. Docs. 33-24 at 4; 33-25 at 2. Bellows subsequently left voicemails for both Traylor and Fender declining to resign and instructing the Hospital to contact her attorneys with additional questions. Doc. 33-24 at 4–5. Based on Bellows' statement that she would not resign, the Hospital assumed that Bellows had accepted the transfer and sent her a letter indicating her start date and confirming other relevant details of the new position. Doc. 33-25 at 2–3. Bellows never reported to work as scheduled, or contacted the Hospital again. Docs. 33-24 at 6; 33-1 at 38–39.

## III. **ANALYSIS**[2]

"The ADEA prohibits employers from firing employees who are forty years or older because of their age." *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015) (citing 29 U.S.C. § 623(a)(1)). "[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse

---

[2] The AADEA uses the same analytic framework as the ADEA. S*ee Robinson v. Ala. Cent. Credit Union*, 964 So. 2d 1225, 1228–29 (Ala. 2007). Accordingly, the court's analysis under the ADEA applies equally to Bellows' state law AADEA claim.

employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). The requisite showing of 'but-for' causation "can be made through either direct or circumstantial evidence." *Liebman*, 808 F.3d at 1298. When only circumstantial evidence of discrimination is presented, as here, the court applies the familiar burden-shifting framework first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012).

"Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination, which 'in effect creates a presumption that the employer unlawfully discriminated against the employee.'" *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). To establish a prima facie case of age discrimination, a plaintiff must show: "(1) that she was a member of the protected group of persons [under the ADEA] . . . ; (2) that she was subject to adverse employment action; (3) that a substantially younger person filled the position that she sought or from which she was discharged; and (4) that she was qualified to do the job for which she was rejected." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999). As relevant here, the third element may also be satisfied by showing that the employer "treated employees who were not members of [the] protected class more favorably under similar circumstances." *Washington v. United Parcel Serv., Inc.*, 567 F. App'x

749, 751 (11th Cir. 2014) (citing *Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1083 (11th Cir. 2005)).

"Once an employee has established a prima facie case, 'the burden shifts to the employer to rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for the adverse employment action.'" *Liebman*, 808 F.3d at 1298 (quoting *Kragor*, 702 F.3d at 1308). Importantly, the "defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (quotation omitted). If the employer succeeds in providing a legitimate non-discriminatory reason for the adverse action, "the burden shifts back to the employee to show that the employer's reason is a pretext." *Liebman*, 808 F.3d at 1298. The plaintiff can make this showing "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. Thus, the plaintiff must "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs*, 106 F.3d at 1528.

Here, the Hospital challenges only the adverse action and discriminatory treatment prongs of Bellows' prima facie case.  Additionally, the Hospital contends that even if Bellows is able to establish a prima facie case, she cannot show that the Hospital's neutral explanation for its actions was pretextual.  In response, Bellows claims that she was unquestionably subject to an adverse action, termination, and that the Hospital treated similarly situated younger nurses who engaged in the same purported misconduct more favorably.[3]  Bellows further argues that the Hospital's policy changes following her discharge suffice to demonstrate pretext. The court addresses each argument in turn, beginning with the prima facie case.

### A. Does Bellows State a Prima Facie Case of Age Discrimination Under the ADEA?

The first contested element of the prima facie case is whether Bellows was subject to an adverse employment action in the first place.  "[I]t is clear . . . that not all conduct by an employer negatively affecting an employee constitutes adverse employment action." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir.

---

[3] Bellows also argues that the option to transfer offered by the Hospital, which she did not want, amounted to a constructive discharge.  Doc. 38 at 8–9.  However, this fact does not suffice to transform her claim into one for constructive discharge.  "The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that [her] 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004)).  In the Eleventh Circuit, "'[t]o prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment.'" *Bryant v. Jones*, 575 F.3d 1281, 1299–00 (11th Cir. 2009) (quoting *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992)).  Bellows has neither presented evidence nor argued that she was subject to severe discrimination of this type over the course of her lengthy employment.

2001).  Instead, "to prove adverse employment action . . . an employee must show a *serious and material* change in the terms, conditions, or privileges of employment."  *Id.* at 1239 (emphasis original).  This entails "significant change[s] in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Vance v. Ball State Univ.*, 570 U.S. 421, 429 (2013) (quotation omitted).  Critically, "the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances."  *Davis*, 245 F.3d at 1239.

Bellows is correct that a termination generally constitutes an adverse employment action.  *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (classifying termination as an "ultimate employment decision" sufficient "to establish an adverse employment action").  Here, however, the circumstances surrounding the conclusion of Bellows' employment are not so clear cut.  Viewing the facts in the light most favorable to Bellows, after receiving a notice of termination, doc. 39-1 at 2, Bellows met with the Vice-President of Surgical Services, Thomas Fender, on the next business day.  Docs. 33-1 at 37; 33-25 at 2.  Although Fender did not inform Bellows that he would rescind her termination, he instructed a human resources specialist, Cynthia Traylor, to investigate Bellows'

complaints. Docs. 33-1 at 37; 33-24 at 3. In turn, Traylor began an investigation, instructed payroll to place Bellows on paid administrative leave, and updated Bellows on her employment status. Docs. 33-1 at 37; 33-24 at 3; 33-26 at 2; 33-27 at 3. Two days after meeting with Fender and three business days after Bellows received notice of her termination, the investigation concluded, and Fender attempted to contact Bellows to inform her that she could either: (1) resign with thirty days of paid administrative leave; or (2) accept a final warning along with a reassignment to a similar position with a different unit. Docs. 33-1 at 38; 33-24 at 4–5; 39-1 at 16. While Bellows left a voicemail rejecting the offer of resignation, she never responded to the transfer option. Doc. 33-24 at 4–5. In fact, the Hospital made multiple attempts to contact Bellows, eventually sending her a letter informing her that it assumed that she was "electing to be reassigned to a new nursing unit in the Surgical Service line and [was] accepting the final warning." Doc. 33-25 at 2–3. The letter also included a start date for her new assignment. *Id.* However, Bellows never showed up for work, contending in her deposition that she had "already accepted that [she] had been terminated." Doc. 33-1 at 39. While Bellows may have "accepted" her discharge, the record belies her contention that she was unaware that the Hospital had rescinded its decision.[4]

_____

[4] Moreover, contrary to Bellows' suggestions, placing an employee on paid administrative leave does not constitute an adverse employment action. First, virtually every appellate court to consider the issue has concluded that placing an employee on paid,

10

Still, for purposes of this motion, the court will assume that Bellows has established that she was subject to an adverse employment action either because of the initial decision to discharge her or the subsequent offer of a lateral transfer to a position she did not want. However, Bellows' prima facie case still fails because she is unable to demonstrate that the adverse employment action she experienced was the result of discrimination based on her age. *See Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000) (pointing out that "[a] plaintiff must show . . . that the defendant's employment decisions . . . were in fact motivated" by discriminatory animus).

To make the requisite showing of discrimination, Bellows relies entirely on comparator evidence. When evaluating comparator evidence, the court asks

administrative leave, without more, does not constitute an adverse employment action. *See, e.g.*, *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) (collecting cases); *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) (explaining that "administrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action").

Second, the Eleventh Circuit has implied that if an otherwise adverse action, such as a "decision to reprimand or transfer an employee, [is] rescinded before the employee suffers a tangible harm, [it] is not an adverse employment action." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001); *see also Shultz v. Congregation Shearith Israel of the City of New York*, 867 F.3d 298, 306 (2d Cir. 2017) (explaining that "in some circumstances the period of time between a notice of firing and its rescission may be so short as to render the termination *de minimis*"). Here, there is no dispute that the Hospital paid Bellows while she was on administrative leave, docs. 33-26 at 2; 33-24 at 3, and there is no indication that it reduced her compensation or that the termination, rescinded the next business day, had any other tangible effect on the terms or conditions of Bellows' employment. Accordingly, it is questionable whether the Hospital's decision to terminate Bellows and then to rescind that decision in favor of placing her on administrative leave crossed the line into adversity and "impact[ed] the 'terms, conditions, or privileges' of [Bellows'] job in a real and demonstrable way." *Davis*, 245 F.3d at 1239.

"whether the employees [were] involved in or accused of the same or similar conduct and [were] disciplined in different ways." *Burke-Fowler v. Orange Cty.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (quotation omitted). Thus, the "quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.* (quotation omitted). In the Eleventh Circuit, "the comparators need not be the plaintiff's doppelgangers, [but] the 'nearly identical' standard requires much more than a showing of surface-level resemblance." *Flowers v. Troup Cty., Sch. Dist.*, 803 F.3d 1327, 1340 (11th Cir. 2015).

As an initial matter, the court has serious concerns regarding the admissibility of the comparator evidence Bellows offers, which primarily consists of six short, unsworn statements from other nurses.[5] Even setting aside this critical evidentiary issue, however, Bellows still has failed to establish that the Hospital treated her less favorably than similarly situated younger employees. First, the provided statements are almost uniformly devoid of the important background details necessary to establish that the individuals who provided the statements are

---

[5] The Hospital has moved to strike these statements, doc. 42, noting that the statements are unsworn and fail to meet the requirements for the admission of unsworn statements established by 28 U.S.C. § 1746. Critically, "[u]nsworn statements 'do[] not meet the requirements of Fed. Rule Civ. Proc. 56(e)' and cannot be considered by a district court in ruling on a summary judgment motion." *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970)). Although the motion to strike is well grounded, the court will consider these statements in analyzing the motion for summary judgment.

proper comparators. *See* Doc. 39-1 at 5–10. Most critically, none of the statements indicate whether the purported comparator is younger than Bellows. Only one comparator's age is established by other record evidence, Angela Locklear, who, although she is considerably younger than Bellows, is well over forty, and therefore, like Bellows, is protected by the ADEA. *Id.*; Doc. 33-30 at 12. In any event, for purposes of establishing a prima facie case of age discrimination, it is logically necessary that the plaintiff show that the employees who were allegedly treated more favorably, i.e., the comparators, were younger than the plaintiff. *See Wilson v B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004) (explaining that the plaintiff must show that she "was subjected to an adverse employment action in contrast with similarly situated employees outside [of her] protected class").[6] Thus, in the absence of any evidence establishing the ages of the purported comparators at the time in question, five of the six statements lack any relationship with the question of "whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (quotation omitted).

Bellows has also, in some instances, failed to indicate either the position held by the proposed comparator or the unit where that individual worked. *See*

---

[6] The court recognizes that "[t]he fact that one person in the protected class has lost out to another person in the protected class is . . . irrelevant, so long as [she] lost out *because of [her] age*." *O'Connor v. Consol. Coin Caterers Corp.*, 617 U.S. 308, 312 (1996) (emphasis in original).

Doc. 39-1 at 8–10. While this lack of detail does not totally deprive the evidence of probative value, it makes the court's task of determining whether Bellows and her proposed comparators are sufficiently similar to allow for a meaningful comparison impossible. This information is critical because "material differences in the [employees'] respective ranks and job responsibilities" generally preclude a comparison. *Rioux v City of Atlanta*, 520 F.3d 1269, 1281 (11th Cir. 2008). Indeed, "if an employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown." *Chescheir v. Liberty Mut. Ins. Co.*, 713 F.2d 1142, 1148 (5th Cir. 1983). Moreover, "differences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination." *Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1261 n.5 (11th Cir. 2001). Accordingly, to the extent that the proffered comparators worked in different units or for different supervisors, the allegedly more favorable treatment received by those individuals "may not be comparable" to the treatment Bellows received. *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989).

Second, even putting aside these issues, Bellows has failed to indicate, as she must, that the comparators "alleged misconduct [was] 'nearly identical to [her own].'" *Flowers*, 803 F.3d at 1340 (quoting *Silvera*, 244 F.3d at 1259). The Hospital has put forward two specific violations of work rules committed by

Bellows: (1) discharging a patient based on progress notes which stated only "[h]ome possibly A.M. tomorrow v/s later today" and without a doctor's express authorization, and (2) falsifying documentation to indicate that she had received the appropriate authorization from a physician. *See* Docs. 39-1 at 2; 32 at 21. None of the comparators were "involved in or accused of the same or similar conduct and [subsequently] disciplined in different ways." *Burke-Fowler*, 447 F.3d at 1323 (quotation omitted). *Id.* Instead, the comparator statements presented by Bellows uniformly indicate that some nurses, not necessarily in Bellows' unit, routinely wrote discharge orders based on a doctor's progress notes. Doc. 39-1 at 5–10.

To the extent these statements provide additional information about the practice of discharging patients based on progress notes, however, the clear implication is that the comparators were acting on the basis of the express authorization of a doctor or other supervisor. For example, one statement indicates that "[i]n the past the doctors have written notes in the . . . progress notes that they were supposed to write as orders," and that "doctors or physician assistants [orally provided] specific orders . . . [before writing] them in the progress notes." *Id.* at 8. Similarly, another statement explains that "if a physician wrote in the progress notes that the patient may be discharged the nurse was permitted to write a telephone order discharging the patient; so long as the telephone order followed the

15

physician's requirements for discharge." *Id.* at 5. These statements are consistent with the testimony of the only deposed comparator, Angela Locklear, who explained that while nurses could discharge patients based on explicit oral directives or written notes from a physician, a note suggesting only the possibility of discharge was insufficient. Doc. 33-30 at 10.

Moreover, none of the provided statements indicate that the nurses falsified orders placed in patients' charts without, at the least, direct authorization from a doctor or supervisor. In other words, none of the comparator nurses contend that they completed the paper work to discharge a patient without express permission to do so, or that they ever falsified charts to indicate they had received physician approval for a discharge when they had not. To put it differently, unlike her comparators, Bellows admits that she never spoke to the treating physician or identified proper written authorization in the progress notes before she completed the patient discharge form and indicated the receipt of physician approval for discharge in the patient's chart. Doc. 33-1 at 34, 39, 44.

In the court's view, therefore, there is a qualitative difference between the comparators' conduct, *e.g.*, writing orders when "the physician was present and verbally gave the order," doc. 39-1 at 10, or when "the doctors have written notes in the . . . progress notes that they were supposed to write as orders," *id.* at 8, and Bellows' falsification of a patient's record to indicate the receipt of a proper order

for discharge. Indeed, as the termination form Bellows received indicates, the treating physician was upset that Bellows discharged the patient without his knowledge or authorization. *Id.* at 2.[7] "The obvious differences between [Bellows'] circumstances and those of [her] purported comparators are hardly the stuff of an apples-to-apples comparison." *Flowers*, 803 F.3d at 1340. In other words, Bellows has failed to show that the employees with whom she compares her treatment "were similarly situated in all aspects, or that their conduct was of comparable seriousness to the conduct for which [she] was discharged." *Holifield v. Reno*, 115 F.3d 1555, 1563 (11th Cir. 1997). Therefore, where, as here, "a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Id.* at 1562 (emphasis omitted).

### B. Does Bellows Show that the Hospital's Explanation for her Discharge was Pretextual?

Bellows' claim fails also because the Hospital has "articulat[ed] a legitimate, non-discriminatory reason for the adverse employment action," *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009), i.e., Bellows' decision to falsify a patient's progress notes and to discharge that patient without authorization. Docs. 32 at 21; 39-1 at 2. Therefore, to survive summary judgment, Bellows must present enough

---

[7] Another potentially significant distinction between Bellows and her comparators is that the patient Bellows discharged "returned to the emergency department and was re-admitted for post-op fever." Doc. 39-1 at 2. None of the comparators report experiencing a similar situation.

17

evidence "'to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (quoting *Combs*, 106 F.3d at 1528). As explained, the plaintiff may establish pretext via a demonstration of "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Combs*, 106 F.3d at 1538 (quoting *Sheridan v. E.I. DuPont De Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir. 1996) (en banc)).

As evidence of alleged pretext here, Bellows principally relies on the same comparator evidence she utilized as part of her prima facie case. However, as stated previously, the proffered comparators are not sufficiently similar to Bellows to allow for any meaningful comparisons. Therefore, this contention of alleged pretext is unavailing.

Secondarily, Bellows argues that the Hospital changed its policy after her termination by directing nurses to no longer discharge patients based on progress notes. Doc. 38 at 10. While Bellows is correct that "shifting explanations" may demonstrate pretext, *see Bechtel Construction Co. v. Secretary of Labor*, 50 F.3d 926, 935 (11th Cir. 1995), the Hospital's explanation for the actions it took against Bellows has never changed. In Bellows' termination form, the Hospital indicated

that Bellows had violated policy by discharging a patient without authorization and by falsifying the records to substantiate her actions. Doc. 39-1 at 2. That the Hospital took steps to clarify its procedures after its internal investigation of Bellows' complaints revealed that some nurses did not fully understand the discharge policy does not show that the Hospital altered its rationale for discharging Bellows. Docs. 33-1 at 44; 33-27 at 2–3. At best, the clarification in policy suggests that the Hospital treated Bellows unfairly by disciplining her for violating an unclear policy.[8] However, the court is not "in the business of adjudging whether employment decisions are prudent or fair. Instead, [the court's] sole concern is whether unlawful discriminatory animus motivate[d] a challenged employment decision." *Damon*, 196 F.3d at 1361. In that light, the Eleventh Circuit has clarified that "[t]he inquiry [under] the ADEA is limited to whether [the decisionmaker] *believed* that [the plaintiff] was guilty of [violating a work rule], and if so, whether this belief was the reason behind [the plaintiff's] discharge." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (emphasis in original). In other words, an employer "may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as *its action is not for a discriminatory reason*." *Damon*, 196 F.3d at 1363 n.3

---

[8] Indeed, the Hospital's investigation concluded that it could understand "why [Bellows] might be under the assumption that the physician is not always contacted [prior to patient discharge] based on the relaxed process that seems to have evolved over time." Doc. 33-27 at 3.

(emphasis in original) (quotation omitted). There is nothing in the record to suggest that the Hospital's decisionmakers did not earnestly believe that Bellows violated a work rule. As such, to the extent that "the employer fired [Bellows] because it honestly believed that [Bellows] had violated a company policy, even if it was mistaken in such belief, the discharge is not 'because of [age]' and the employer has not violated" the ADEA. *Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1452–53 (11th Cir. 1987).

Ultimately, Bellows has failed to "undermin[e] the legitimacy of [the Hospital's] proffered reason[s]" for discharging her, *Muñoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1346 (11th Cir. 2000), and there is nothing in the record for "a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Chapman*, 229 F.3d at 1024 (quotation omitted). Therefore, summary judgment is due to be granted.

## IV. CONCLUSION

For the foregoing reasons, the Hospital's motion for summary judgment, doc. 31, is due to be granted, and the Hospital's motion to strike, doc. 42, is moot. The court will enter a separate order dismissing this case.

**DONE** the 9th day of July, 2018.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE